(Decided 19th January, 1877.)

---

MASON E. McKNEW, and others *vs.* GEORGE W. DUVALL of GEORGE, use of PETER G. GRIMES.

*Questions not before the Appellate Court for review—Sections 6 and 7 of Article 9 of the Code—Act of 1864, ch. 243—Scire facias by a Surety on a Judgment rendered in favor of the State, against the Principal and his Sureties upon a Penal bond—Defects in the Judgment, and in the Scire facias and in the Verdict thereon—Defects not curable · by Verdict—Practice.*

To a *scire facias* on a judgment, *nul tiel record* was pleaded and replied to, and the issue formed thereon was tried before the Court and resulted in favor of the plaintiff. On the trial of said issue the record sued on was offered in evidence, but no bill of exception was taken, certifying that such was the record offered by the plaintiff, and that its admissibility or sufficiency was excepted to by the defendants. On appeal by the defendants, it was HELD:

That the questions arising upon the record so offered in evidence were not before the Court for review.

In addition to the above issue, other issues were formed on pleas of payment which were tried before the jury. Upon these issues the following verdict was rendered: "Verdict for plaintiff for $2722.66 damages on M. E. McKnew," (one of the defendants,) "and for $2268.90 damages against sureties." On motion in arrest of judgment, it was HELD:

McKnew, *et al. vs.* Duvall, use of Grimes.

1st. That secs. 6 and 7 of Art. 9 of the Code relating to the satisfaction of a judgment against a principal debtor and his surety by the surety, and to the satisfaction of a judgment against several sureties by one of the sureties, being referred to in the Act of 1864, ch. 243, and the Act being made subject thereto, are to be construed as part of said Act.

2nd.. That under said sections of the Code and the said Act of 1864, as against the principal debtor in a judgment rendered in favor of the State, the surety or sureties paying the same in full, *or any balance due thereon,* may rightfully claim to have the judgment entered to his or their use to the extent of the amount paid in satisfaction of said judgment.

3rd. But as against a co-surety or sureties in the judgment, the surety claiming to have the judgment entered to his use must have paid the *whole* of the judgment.

The *scire facias* recited a judgment recovered by the State against the defendants therein named for $26,500.00, "being the penalty of a certain bond before that time made and executed by the said defendants to the said State of Maryland, as also the sum of $11.50 costs;" the amount actually due, if ascertained, was omitted. HELD:

1st. That if the judgment recited was perfected, it should have ascertained the true amount due; and if it was not, but only entered for the penalty of the bond sued on, without further ascertainment, the judgment was interlocutory and not binding as a final judgment, and therefore not in a condition to be executed.

2nd. That the *scire facias* therefore did not set forth a good and perfect judgment.

3rd That the said writ was also defective because even if the penalty of the bond was to be taken as the true amount of the original recovery, there was no sufficient statement as against co-sureties, that the whole amount of the judgment had been paid by the present plaintiff.

By the said writ the sheriff was commanded to make known to Mason E. McKnew, William McKnew, Thomas Harvey, John N. Robey and Ninian Beall, to appear and show cause why the plaintiff in the writ should not have execution against the said Mason E. McKnew for a certain sum, and against William McKnew for a certain other sum, omitting the other parties, followed with the suggestion that Thomas Harvey, John N. Robey and Ninian Beall were insolvent. HELD:

1st. That in this respect also the writ was defective.

2nd. That the foregoing defects were not of a character to be cured by the verdict, and so were liable to be taken advantage of on motion in arrest of judgment.

3rd. That the verdict itself was fatally defective; first, because it did not accord with the writ; and secondly, because it was uncertain who were the parties embraced by the term "sureties."

As against John N. Robey, one of the defendants in the writ, a *fiat* had been entered previous to the trial and verdict. HELD:

1st. That if it was the intention of the jury by "their verdict" to include him with the other "sureties" it was clearly wrong.

2nd. That no judgment could be entered upon the verdict against him, nor could any proper verdict be entered thereon against the other sureties.

APPEAL from the Circuit Court for Prince George's County.

The case is stated in the opinion of the Court. The appeal was taken from the decision of the Court below, over-ruling the motion in arrest of judgment, from the judgment of the Court upon the plea of *nul tiel record*, and from the judgment of *fiat* entered upon the verdict.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*Joseph K. Roberts, Jr.* and *William H. Tuck*, for the appellants.

Where the *scire facias*, on its face shows that a surety has only paid a part of a judgment, and the verdict also shows he has only paid a part of the said judgment, no judgment of *fiat* in favor of such surety, in his own name, can be entered against the principal and his co-sureties, and the motion in arrest of judgment should not have been overruled. *Code of Public Genl. Laws, Art.* 9, *s.* 7; *Act of* 1864, *ch.* 243; *Hollingsworth vs. Floyd*, 2 *H. & G.*, 87; *Neptune Ins. Co. vs. Dorsey*, 3 *Md. Ch. Dec.*, 334; *Swan*

*vs. Patterson*, 7 *Md.*, 164; *Grove vs. Brien*, 1 *Md.*, 438.

The writ of *scire facias* alleges that Thomas Harvey, John N. Robey and Ninian Beall are insolvent, and seeks to have execution against William McKnew alone, but not against the others, and not for one-half of the amount paid by George W. Duvall, of George, as appears upon the face of the writ, but for one-half of the whole judgment—he not having paid the whole judgment, as appears from the face of the writ.

The verdict is against all the sureties, and if the other sureties are insolvent, as averred in the writ of *scire facias*, then the entry of a judgment upon the said verdict would enable the plaintiff, George W. Duvall, of George, one of the sureties, to have a *fiat* against William McKnew, the co-surety, for the sum of $2268.90, more than four-fifths of the amount due by the principal, whereas he should only have judgment against his co-surety, according to the averments of the writ, for one-half of the amount due on the judgment by the principal.

But the writ does not seek to enforce a *fiat* against any of the sureties except William McKnew, whereas the verdict is against all the sureties. Such a verdict cannot be the foundation of a judgment of *fiat* on the writ of *scire facias* in this case.

Suppose a writ of *scire facias* or suit seeks to make A only responsible, and a verdict is rendered against A and B, can the Court render a judgment against A and B, based on such a verdict? Would not the judgment be such a judgment as the writ or declaration would not support? The motion in arrest should have been granted. *Evans' Practice*, 423; *Nolan vs. Ringgold*, 3 *Har. & Johns.*, 216; *Sasscer vs. Walker*, 5 *G. & Johns.*, 102.

*C. C. Magruder, Jr.* and *Frank H. Stockett*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

The *scire facias* in this case as originally sued out was against five defendants, reciting a judgment recovered by the State against six defendants. The judgment recited was recovered at the November term of the Circuit Court for Prince George's County, 1861. The defendants to the original judgment as recited were Mason E. McKnew, William McKnew, Thomas Harvey, John N. Robey, Ninian Beall and George W. Duvall, of George, and the *scire facias* was issued against all except the last named defendant; the judgment having been entered to his use by order of the State's attorney, and the *scire facias* issued for his benefit.

The first writ of *scire facias* was returned "*nihil*" as against all the defendants therein named; and, upon renewal, the second writ was returned "*nihil*, John N. Robey, *scire feci* the rest." Counsel appeared for the defendants served, and the writ was renewed as against Robey, and, at the October term, 1861, was returned "*scire feci*." That defendant failing to appear, *fiat* was entered as against him, though the record does not show for what amount.

The defendants who appeared by counsel moved to quash the writ for certain defects apparent upon its face; and this motion led to two several amendments of the writ, the last being made as of the first of September, 1873. It was to the writ as thus amended that the defendants pleaded, and with other pleas, they interposed the plea of *nul tiel record*. That plea was replied to and issue formed thereon, which was tried by the Court, and which trial resulted in a finding in favor of the plaintiff. The other issues formed on the pleadings were tried by a jury, and a verdict was rendered in favor of the plaintiff, the peculiarities of which will be noticed hereafter.

At the trial of the issue of *nul tiel record*, it is stated that the plaintiff offered in evidence the record of the

original judgment, upon which the writ of *scire facias* was issued; and there is set out in the transcript what purports to be the record thus offered. But there was no bill of exception taken, certifying that such was the record offered by the plaintiff, and that its admissibility or sufficiency was excepted to by the defendants; and, consequently, none of the questions supposed to arise on that record are before this Court for review. The plea of *nul tiel record* merely put in issue the existence of the record as recited in the *scire facias;* the replication to such plea simply re-asserting the existence of the record, and concluding with a prayer that it might be viewed and inspected by the Court. In the trial of this issue by the Court, if the defendants intended to have the decision of the Court below reviewed here, they should have tendered a bill of exception, setting forth the record offered, the ruling of the Court with respect to it, and the exception thereto. Otherwise the record offered formed no part of the record of the case on trial, and no question can be raised in this Court in respect to its admissibility or sufficiency. This is the well established rule of procedure in the Courts of this State, as will abundantly appear from the cases of *Dorsey vs. Whetcroft,* 1 *H. & J.,* 463; *Ayres vs. Kain,* 3 *Gill & John.,* 24, and *Boteler & Belt vs. State, use of Chew,* 8 *Gill & John.,* 359.

The Court having disposed of the issue of *nul tiel record,* the remaining issues to be tried were formed on pleas of payment; and upon trial of these issues a verdict was rendered thus: "Verdict for plaintiff for $2722.66, damages on M. E. McKnew, and for $2268.90, damages against sureties." There was a motion in arrest of judgment, founded upon various reasons assigned, but the motion was overruled, and judgment entered upon the verdict as rendered.

Judgments may be arrested for either defects in the *pleadings* or defects in the *verdict.* The pleadings may

be good and yet the verdict be bad, giving ground for arrest of judgment. *Bac. Abr. Verdict, M. & O; Cro. Eliz.*, 133 ; 2 *Str.*, 1089 ; *Gould's Plead.*, 494-5.

In this case, the *scire facias* was intended to be issued in pursuance of the Act of 1864, ch. 243, which provides that in any case where judgment shall be recovered by the State against any principal debtor and a surety or sureties, and said judgment *shall be satisfied* by said surety or sureties, the same shall be entered by the State's attorney to the use of the surety or sureties satisfying the same, on filing the certificate of the Comptroller stating that said judgment *has been so satisfied;* and said surety or sureties shall then be entitled to execution in his or their own name or names against the principal and the other sureties, *in the same manner and subject to the same provisions* contained in sections 6 and 7 of Article 9 of the Code, to which the Act of 1864, ch. 243, is a supplement.

The 6th section of the Article referred to provides, that where any person shall recover a judgment against the principal debtor and surety, and the judgment shall be satisfied by the surety, the creditor shall assign the same to the surety, who shall, thereupon, be entitled to execution in his own name against the principal. And the 7th section of the same Article provides, that where any judgment shall be rendered against several sureties, *and one of them shall satisfy the whole,* the plaintiff shall be obliged to assign such judgment to the surety satisfying the same, who shall be entitled to execution against the other sureties in the judgment for a proportionable part of the debt or damage paid by such assignee.

These two sections, being referred to in the Act of 1864, ch. 243, and the latter Act being made subject thereto, are to be construed as part of the Act of 1864, ch. 243, and we are to gather from the three sections read as one statute, what remedy the Legislature really intended to provide for the surety.

Before the passage of the Act of 1864, ch. 243, it had been decided that a judgment recovered by the State against principal and sureties, or against several co-sureties, could not be assigned to a surety paying the same, under the Act of 1763, ch. 23, sec. 8, (since codified in sections 6 and 7 of Article 9 of the Code,) for want of authority in the State's agents. *Peacock vs. Pembroke*, 8 *Md.*, 348. The object of the Act of 1864, ch. 243, was to confer authority upon the State's attorney to enter the judgment to the use of the surety paying the same, upon the certificate of the Comptroller that the judgment had been fully paid; thus placing the surety in a judgment recovered by the State in the same position as a surety in a judgment recovered by an individual. But the question is, under what circumstances can the surety claim to have the judgment entered to his use? As against the principal debtor in the judgment, looking to the relative rights and obligations of the parties, we think the surety or sureties paying the judgment in full, *or any balance due thereon*, may rightfully claim to have the judgment entered to his or their use, to the extent of the amount paid in satisfaction of such judgment. But as against a co-surety or sureties in the judgment, a different rule prevails. In that case, the surety claiming to have the judgment entered to his use, must have paid, by the very terms of the statute, the *whole* of the judgment. This is required for obvious reasons. It would not be consistent with reason or justice that a judgment should be entered to the use of a surety, with power to issue execution against co-sureties, upon payment of a mere balance of a judgment, which might be less than the sum that he would be required to contribute to the payment of the whole amount recovered. Other sureties in the judgment might pay much the larger portion of the amount recovered, and yet, according to the construction contended for by the plaintiff here, the surety making the last payment, and thus satis-

fying the balance due, would be entitled to have the judgment entered to his use for the purpose of enabling him to sue out execution against his co-sureties in the judgment. This we think, is not what the statute contemplates. Neither the Comptroller nor the State's attorney is authorized to adjust the rights and equities as between the co-sureties.  The surety is entitled to reimbursement for any sum that he may pay for his principal, but not so as against his co-sureties.  As against them, his right is founded on principle of proportionable contribution.  It is therefore provided, by section 7 of Article 9 of the Code, before referred to, that upon any of the sureties satisfying the *whole* judgment, the plaintiff shall assign such judgment to the ·surety so satisfying the same, who shall be entitled to execution against the other sureties in the judgment for a *proportionable part of the debt so paid*.  Payment of anything less than the whole amount of the judgment does not authorize the entering of the judgment to the use of one or more sureties, as against co-sureties in the judgment; though it is otherwise as against the principal debtor, if the amount paid be in full satisfaction of all that is then due on the judgment.  And to entitle the surety to the benefit of this statutory remedy, he should make it· appear, upon the face of his proceedings, that he is within the terms of the statute giving the remedy.

It has been repeatedly decided that a *scire facias* is in the nature of a declaration, and that, it should contain upon its face such a statement of facts, as to justify the process in respect to the form in which it is issued, and the persons who are made parties to it.  *Prather vs. Manro*, 11 *Gill & J.*, 261; *Warfield vs Brewer & Keefer*, 4 *Gill*, 265.  It should contain such proper recitals as to show in what right, and for what amount, it is issued; and this with a sufficient degree of certainty to enable the Court to see and determine for whom, and for what amount, to award execution.

In this case, the *scire facias* does not appear to conform to these requisites.

In the first place, the judgment recited is wholly defective. It recites a judgment recovered by the State against the defendants therein named, for $26,500, "being the *penalty* of a certain bond before that time made and executed by the said defendants to the said State of Maryland, as also the sum of $11.50, costs," and nothing more. This is only the formal part of the judgment; and the amount actually due, if ascertained, is omitted. In suits upon penal bonds with collateral conditions, the judgment is entered for the penalty, to be released upon payment of the sum found to be due, with interest; "and the sum really due as aforesaid, or in any other manner ascertained, upon bonds and other instruments of writing, with penalty, shall be considered in law as the true debt, and shall be so pleaded by and allowed to administrators and others." *Code, Art.* 75, *sec.* 63. If the judgment was perfected, it should have ascertained the true amount due; and if it was not, but only entered for the penalty of the bond sued on, without further ascertainment, the judgment was interlocutory, and not binding as a final judgment, and therefore not in a condition to be executed. *Clark vs. Digges,* 5 *Gill,* 109. The *scire facias* therefore does not set forth a good and perfect judgment. If the real amount due was ascertained, it formed the substantial part of the judgment, and should have been set forth in the *scire facias;* as it is upon the judgment recited in the writ that execution is awarded. *Moore vs. Garrettson,* 6 *Md.,* 444.

Again, the *scire facias* does not recite for whom George W. Duvall, the party suing out the writ, was surety, except inferentially; but, taking such fact to be sufficiently stated, if the penalty of the bond recited in the writ is to be taken as the true amount of the original recovery, there is no sufficient statement, as against co-

sureties, that the whole amount of the judgment had been paid by Duvall, the present plaintiff. To entitle him to an award of execution under the statute, against his co-sureties, such statement is essential.

But again, the sheriff was commanded by the writ to make known to Mason E. McKnew, William McKnew, Thomas Harvey, John N. Robey and Ninian Beall, to appear and show cause why the plaintiff, Duvall, should not have execution against the said Mason E. McKnew, for a certain sum, and against William McKnew, for a certain other sum, and not against the other parties, followed with the suggestion that Harvey, Robey and Beall were insolvent. The object of the writ, therefore, would seem to have been to revive the judgment and obtain execution against only two of the original defendants. In this the writ is certainly defective; and, taking it as a whole, it utterly fails to present a case to entitle the plaintiff to execution against his co-sureties.

It has been contended in argument that the defects in the writ have been cured by the verdict; but it is clear that the defects are of a character not to be so cured; and that being so, they are liable to be taken advantage of on motion in arrest of judgment.

But the verdict itself is fatally defective. It was rendered for a certain sum as against Mason E. McKnew, and for a certain other sum, *in solido* " against sureties." In the first place, this does not accord with the writ, and, in the second place, it is uncertain who are the parties embraced by the term "sureties."

As we have seen, Robey's name appears in the present writ as one of the defendants, yet the writ was returned *nihil* as to him, and, upon renewal, a *fiat* was entered against him at the October term of the Court, 1871. Now, the term "sureties," as employed in the verdict, without restriction as to persons embraced by it, leaves the matter in doubt and uncertainty, whether Robey,

named in the writ as one of the sureties, was not intended to be embraced as well as the other defendants falling within the description. Indeed, looking to the amount found against the sureties, as compared with that found against the principal debtor, it would seem to be even more than doubtful as to the intention of the jury to include Robey with the other sureties; and, if such was the intention it was clearly wrong, as Robey had not appeared and joined in the pleading, but, upon default, had previously suffered *fiat* to be entered against him. No judgment therefore could be entered upon this verdict against Robey, nor could any proper judgment be entered thereon against the other sureties. *Miles vs. Knott*, 12 *Gill & John.*, 455.

*Judgment reversed.*

(Decided 24th January, 1877.)

